Caruthers, J.,
delivered the opinion of the Court.
John A. Moore died, leaving personal estate of the *184 value of about $2,000, and the defendant became his administrator.
The deceased left no parents, wife or children, but several brothers and sisters of the whole blood, and half brothers and sisters on the side of his mother, as well as of his father. The estate was derived from his father. The defendant made distribution equally between the full blood and the half blood on the paternal side, to the exclusion of the side of the mother, of whom the complainant is one. This bill is filed for redress, and the question is, whether, under the circumstances, the half blood on the maternal side are entitled to share equally in the distribution.
If the estate had been realty, the proper direction was given to it, as by the first proviso to the 3d sec. of the act of April, 1784, ch. 22, the half blood of the line, from the head of which the land was derived, are to inherit, to the exclusion of the other line.
In the distribution of personalty, among collaterals, the rule, as laid down in the act of 1766, ch. 3, Car. & Nich., 253, and not since changed, is, “ In case there be no child,” (or wife,) “then to the next of kindred, in equal degree, of or unto the intestate, and their legal representatives, and ■ in no other manner whatsoever.”
The only inquiry then is, who are the next of kin to the deceased? This is to be ascertained by the application of the civil law rule of computation, which has been adopted here and in England, in questions of descent and distribution. This mode, as to collaterals, is to count the degrees from the desceased up to the *185 common parent or ancestor, and down to the relations in question. Where there are more than one in equal degree, they are to participate equally in the distribution of the property. The half blood on the side of the father, and those on the side of the mother, are in equal degree. The father is in the first. degree, and so is the mother, and the children of each are in the second degree to the estate. There is no law-giving any preference to the half blood on the side of the transmitting ancestor to the exclusion of the other line in the distribution of personalty.
Our statute of descents of 1784, ch. 22, § 3, abolished the rule of the English law, which excluded the half blood from the inheritance, as one founded alone in feudal policy, inapplicable here, and let them into an equal participation with the whole blood. But by the first proviso, preference was given to the line from which the land descended.
The act of 1796, ch. 14, changed the former acts so far as to let in sisters equally with brothers, and also expressly provided for the half as well as the whole blood. No advantage was given to the line of the parent from which the property was derived, in this act. But this Court decided, in 2 Yerg., 115, that the two acts should be construed together, and that the preference was still continued.
This preference, by which the property is kept in the line from which it was obtained, is very much in accordance with our natural feelings and sense of right and justice, but still it can only exist by express enactment, where the general rule is, that the property shall go to the next of kin equally. To ascertain *186 these, we have a definite and fixed mode of calculation by which the half blood on each side are found to be in the same, degree of relationship. How then, are those on either side, 4o be excluded without a disregard of the positive mandate of the statutes ?
On „this subject, the English statutes and ours are very nearly the same. 1 Will, on Ex., 1 Vol., 344; 2 J. C., 1092. We are not aware, that in that country or this, there has been any diversity of decision in relation to the equal rights of the half blood of both lines in the distribution of estates. Nor have we known any case before in our Courts, in which the provision of our acts of descent, giving a preference to the line of the transmitting ancestor, as between brothers and sisters of the half blood in the descent of real estate, has been attempted to be applied to personalty. It certainly cannot be done, and we affirm the decree of the Chancellor.